FILED
2018 Sep-24 AM 10:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| CHRISTIE BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 6:17-cv-01244-LSC |
| ) | |
| NANCY BERRYHILL, ) | |
| Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

**I.  Introduction**

The plaintiff, Christie Brown, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for a period of disability and Disability Insurance Benefits ("DIB"). Ms. Brown timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Brown was 38 years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has an eighth-grade education, as well as a General Equivalency Diploma ("GED"). (Tr. at 42.) Her past work experiences include

1

detailing cars and moving chickens through processing at a plant. (Tr. at 42, 44.) Ms. Brown claims that she became disabled on January 18, 2012, due to chronic lower back pain and neck pain with degenerative disc disease and degenerative joint disease; thoracic spine pain associated with a compression fracture at T-11; migraines; right knee pain associated with arthritic changes and degeneration of the medial compartment; asthma and allergies; irritable bowel syndrome; obstructive sleep apnea and insomnia; mental illnesses including bipolar disorder, depression, anxiety, and schizophrenia; chronic daily headaches; paresthesia; scoliosis; osteoarthritis; gastroesophageal reflux disease; and post-concussive syndrome which includes personality changes. (Doc. 12 at 1-2.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§

404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ first found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2013. (Tr. at 17.) Thus, she had to establish that she was disabled on or before that date to be eligible for DIB. *See* 42 U.S.C. §§ 416(i)(3), 423(a), (c); 20 C.F.R.

§§ 404.101, 404.130, 404.131. He further determined that Ms. Brown has not engaged in SGA since the alleged onset of her disability through her last insured date. (*Id.*) According to the ALJ, Plaintiff's chronic obstructive pulmonary disease; diabetes mellitus type II; cervical degenerative disc disease with radiculopathy; lumbar degenerative disc disease; scoliosis with low back pain; gastroesophageal reflux disease; coronary artery disease; general anxiety disorder; obesity; and chronic headaches are considered "severe" based on the requirements set forth in the regulations. (Tr. at 17-18.) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 18.) The ALJ did not find Ms. Brown's allegations to be totally credible, and he determined that she has the following RFC:

> light work as defined in 20 C.F.R § 404.1567 (b) except that the plaintiff can occasionally climb ladders, ropes, scaffolds, ramps, and stairs. She can occasionally balance, stoop, crouch, crawl, or kneel. She is limited to occasional exposure to pulmonary irritants including gases, dust, odors, and fumes. She must avoid any exposure to unprotected heights or to uneven terrain. She is limited to work that requires no more than the understanding, remembering, and carrying out of simple instructions; occasional decision making; and occasional interaction with the public, co-workers, and supervisors.

(Tr. at 21.)

According to the ALJ, through the date last insured, Ms. Brown was unable to perform any of her past relevant work, she is a "younger individual," and she has "at least a high school education," as those terms are defined by the regulations. (Tr. at 25-26.) He determined that "[t]ransferability of skills is not an issue in this case because the claimant's past relevant work was unskilled." (*Id.*) Because Plaintiff cannot perform the full range of light work, the ALJ enlisted a vocational expert ("VE") and used Medical-Vocation Rule 201.25 as a guideline for finding that there are a significant number of jobs in the national economy that she is capable of performing, such as an assembler, a laundry folder, and a hand packager. (Tr. at 26-27.) The ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time from January 18, 2012, the alleged onset date, through December 31, 2013, the date last insured." (Tr. at 27.)

## II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v.*

*Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v.*

7

*Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. Discussion

One of Ms. Brown's arguments in support of reversal is that the ALJ erred in giving little weight to the opinions of two of her treating physicians and failing to assign any weight at all to the opinion of a third treating physician.[1] The Court agrees that this case must be reversed and remanded on this ground.

A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends upon, among other things, the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ to not give

---

[1] Plaintiff also argued that the ALJ erred in discounting her subjective complaints of pain.

a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the plaintiff's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a plaintiff's residual functional capacity. *See, e.g.,* 20 C.F.R. § 404.1546(c).

9

The record contains treatment notes indicating that Dr. Jeffrey Long treated Plaintiff from 2005 through 2016. On August 12, 2011, Dr. Long indicated that Plaintiff suffered from severe pain in her neck, back, legs, and chest. (Tr. at 738.) Additionally, he noted she suffered from nausea, constipation, fatigue, and itching. (Tr. at 639.) Dr. Long diagnosed Plaintiff in 2012 with chronic obstructive pulmonary disease, chest pain, hypertension, hand contusion, hip pain, degenerative joint disease of the lumbar spine, diabetes, and reflux esophagitis. (Tr. at 613.) He noted that she was taking numerous medications including Naproxen, Lisinopril, Lortab, Xanax, Soma, Claritin, Zanaflex, Fioricet, Albuterol Sulfate, Prilosec, and Lantus. (Tr. at 610.) In the first part of 2013, Dr. Long noted that Ms. Brown continued to suffer from head and chest pain, frequent and painful urination, and a constant urinary tract infection. (Tr. at 598, 608.) He determined that she had a diminished range of motion in her thoracic and lumbar spine as well as muscle spasms. (Tr. at 598, 600, 603, 606.) He found that medication helped control her pain so that she could complete activities of daily living. (Tr. at 598.) In the first part of 2014, Dr. Long noted that Plaintiff continued to suffer from abdominal pain/swelling, difficulty urinating, pain and swelling in her hands and legs, back and side pain, and jaw pain. (Tr. at 583-93.) He noted at that time that she was prescribed the following medications: Naproxen; Claritin; Xanax; Lantus

SoloStar; Albuterol Sulfate; Norco; Prilosec; and Lisinopril. (Tr. at 583.) In January 2014, Dr. Long performed an upper endoscopy and a colonoscopy, determining that Plaintiff suffered from esophageal dysmotility, gastroesophageal disease, hiatal hernia, gastritis, gastroparesis, irritable bowel syndrome, and internal and external hemorrhoids. (Tr. at 824-25.) In 2015, Dr. Long continued to determine that Plaintiff suffered from numerous upper respiratory infection symptoms, including coughing, congestion, shortness of breath, chest pain, and fever. (Tr. at 998-1026.) He also found that she continued to suffer from severe headaches and associated symptoms, including dizziness, nausea, and fatigue. (Tr. at 1012.)

On October 5, 2011, Dr. Long filled out a two-page Functional Capacity Assessment. (Tr. at 857-58.) He noted that Plaintiff could only sit, stand, and walk for one hour each in an eight-hour work day due to her degenerative disc disease, gastroesophageal reflux disease, COPD, fibromyalgia, lumbar radiculopathy, and cervical radiculopathy. (Tr. at 857.) Furthermore, Dr. Long stated that Plaintiff would miss more than 120 days of work per year because of these impairments. (Tr. at 858.)

Additionally, Dr. Long gave a sworn statement on the same date. (Tr. at 859-82.) Dr. Long noted that Plaintiff's pain typically was at seven to eight out of ten,

but when she worked it was a nine or ten out of ten and never better than a five or six out of ten. (Tr. at 874.) Dr. Long determined that x-rays confirmed the conditions in Ms. Brown's cervical and lumbar spine are reasonably expected to cause her complaints and limitations. (Tr. at 875.) He opined that her conditions would make it difficult for her to get through a workday. (*Id.*) He explained that her diabetes would cause her to have to stop and check her blood sugar and administer insulin on an as needed basis as well as cause peripheral neuropathy, or limited sensation, and she would thus be unable to perform certain tactile functions where she might get burned or cut without knowing it and thus develop some type of wound that would be difficult to heal. (*Id.*) He continued to explain that Plaintiff's diabetes has been poorly controlled and she is insulin dependent. (Tr. at 876.) Next, Dr. Long explained that Ms. Brown suffers from Helicobacter pylora, which he opined may cause some type of ulcer, reflux or gastritis. (Tr. at 879-80.) Overall, Dr. Long found her prognosis was very limited, opining, "With her multiple conditions and poorly controlled diabetes it's going to be a gradual decline through her years." (Tr. at 878.)

    The ALJ gave little weight to the opinions of Dr. Long because he said that his opinions conflicted with his treatment notes and were not otherwise consistent with the other medical evidence of record.

The record also contains treatment notes indicating that Dr. Lorn Miller treated Plaintiff from 2008 through 2015. In 2009, he indicated that Plaintiff complained of low back pain, numbness in that area, neck and shoulder pain. (Tr. at 372.) Dr. Miller noted that Plaintiff was prescribed Fioricet, Soma, Glucophage, Xanax, Albuterol, Atrovent, Advair, and Trazodone. (Tr. at 372.) He determined she has suffered from fatigue/shortness of breath since 2008, "throbbing and sharp stabbing headaches," chest pain with left arm pain, excessive thirst, easy bruising, tremors that were intermittent in her hands since 2007, decreased psychiatric functioning, and difficulty sleeping. (Tr. at 373-74.) In addition, he also found she had a decreased range of motion, tenderness, and muscle spasms in her cervical and lumbar spine. (Tr. at 374-75.) He diagnosed her with the following conditions: Migraine with aura; cervicalgia/neck pain; low back pain; muscle spasms; diabetes; osteoarthritis; paresthesia; thoracic compression fracture; obstructive sleep apnea; bipolar disorder; anatomical short leg (left); and affective disorder with anxiety. (Tr. at 375.) In August 2013 he again treated Plaintiff for severe headaches and back and leg pain. (Tr. at 319.) In October 2013, he noted that Imitrex improved her headaches, but she continued to suffer from them. (Tr. at 326.) Dr. Miller performed a spinal manipulation on Ms. Brown, by reducing tension in the following areas: C1 posterior right; C1 anterior left; and C5-6 on the right. (Tr. at

13

328.) He prescribed her Lisinopril and Naproxen. (Tr. at 330.) On July 28, 2014, Dr. Miller ordered an MRI of Ms. Brown's right knee. The MRI showed, "Degenerative changes most prominent in the medial component. Small non-displaced tear in the body of the medial meniscus." (Tr. at 932.) From July 15, 2014 to September 10, 2014, Dr. Miller noted that she continued to suffer from lower back, and neck pain, and headaches. (Tr. at 344.)

On March 11, 2016, Dr. Miller filled out a two-page Functional Capacity Assessment form, indicating that due to her impairments, Plaintiff was limited in the following ways: she could sit continuously for 1 hour or less; stand and/or walk for 1 hour or less; sit for a total of 2-3 hours in an 8-hour workday; stand and/or walk for 2-3 hours in an 8-hour workday; occasionally lift up to 5 pounds; and rarely lift 6-10 pounds. (Tr. at 1117-19.) Further, Dr. Miller was of the opinion that Plaintiff would miss over 100 days of work per year. (*Id.*) He diagnosed Ms. Brown with lower and cervical pain, thoracic spine fusion, migraines, right knee pain, asthma, irritable bowel syndrome, obstructive sleep apnea, insomnia, bipolar disorder, anxiety, and post-concussive syndrome. (Tr. at 1117.)

Dr. Miller also provided a sworn statement on that same date. (Tr. at 1117-50.) He opined that her conditions would continue to get worse over time. (Tr. at 1138.) He opined that she is unable to perform even sedentary work because of her

14

back, knee, and neck pain. (Tr. at 1141.) He opined that she does not understand directions very well and get confused easily. (*Id.*)

The ALJ also gave little weight to Dr. Miller's opinion because he said it was inconsistent with his treatment records and was dated more than two years after Plaintiff's date last insured. (Tr. at 25.)

The ALJ did not have good cause to give little weight to the opinions of Drs. Miller and Long. First, their medical records document their extensive involvement with Ms. Brown's ongoing care. Additionally, other treating sources support and confirm Dr. Miller and Dr. Long's opinions. For example, in September 2010, Dr. David Longmire, another treating physician, diagnosed Ms. Brown with lumbar and cervical radiculopathy, headaches, fibromyalgia, chronic pain, and noted that she had a family history of cerebral aneurysms. (Tr. at 261.) On January 20, 2014, Dr. Davila, another treating physician, diagnosed her with diabetes, hypertension, degenerative joint disease, osteoarthritis, chronic lower back pain, shoulder pain, leg pain, scoliosis, cervical spurs, and anxiety. (Tr. at 388.) On November 2, 2015, Ms. Brown was treated at Tennessee Valley Pain Consultants. Medical records indicated that her pain level was eight out of ten, and her prior health conditions included fibromyalgia, arthritis, migraines, diabetes, hypertension, asthma, gastric ulcers, GERD, anxiety, bipolar disorder, mild

15

schizophrenia, manic depression, and blood clots in her lungs. (Tr. at 1169.) In short, Dr. Miller and Dr. Long's disability testimony and office notes are in agreement with the totality of the evidence in the record. Indeed, none of Ms. Brown's medical records contradicts these physicians' findings that Ms. Brown continues to experience severe cervical and lumbar pain. Importantly, the ALJ did not assign significant weight to *any* other medical source, indicating that he improperly relied on his *own* assessment of Ms. Brown's medical records without the benefit of any professional examining interpretation. Courts have routinely admonished ALJs for substituting their own "hunches" for those of the medical experts and improperly placing themselves in the shoes of physicians as they substitute their "own uninformed medical evaluations for those of a claimant's treating physicians." *See, e.g.*, *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1985). The ALJ's decision to give little weight to the opinions of Drs. Miller and Long is reversible error warranting a remand of this action for reconsideration.

As noted previously, the record also contains treatment notes indicating that Dr. Longmire, a neurologist, treated Plaintiff from September 2010 through February 2013. He diagnosed her with lumbar and cervical radiculopathy, headaches, fibromyalgia, chronic pain, and noted that she had a family history of cerebral aneurysms. (Tr. at 261.) He determined that Ms. Brown's headaches

caused severe symptoms, including nausea, fainting, vomiting, and frequent blackouts. (Tr. at 262.) On September 22, 2010, an EMG study showed nerve root impingement at C5, and C5-6, and radiculopathy at C5. (Tr. at 268.) On September 24, 2010, a cervical spine MRI showed, "ridging at the C5-6 disc space level." (Tr. at 273.) Additionally, he determined that she suffered from hip pain and numbness in her hands and feet that causes her feet to "give out." (Tr. at 299.)

The ALJ also committed reversible error by failing to articulate a specific weight he was assigning to Dr. Longmire's opinions. An ALJ must consider all medical opinions in a claimant's case record, together with other relevant evidence. 20 C.F.R. § 404.1527(b). "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence. *Id*. "Therefore, when the ALJ fails to state with at least some measure of clarity the grounds for his decision, [the court] will decline to affirm simply because some rationale might have supported the ALJ's conclusion." *Id.* (internal quotation marks omitted). In *Winschel*, the Eleventh Circuit reversed after determining that it was "possible that

the ALJ considered and rejected" two medical opinions because "without clearly articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence." *Id.; see also McClurkin v. Social Sec. Admin.*, 625 F. App'x 960, 962-63 (11th Cir. 2015) (unpublished) (failing to state weight given to non-examining physician's opinion constitutes reversible error).

Based on the foregoing, an ALJ may not ignore or even implicitly reject any medical opinion, but is instead required to state with particularity the weight given to it and the reasons therefor. In this case, although the ALJ acknowledged and discussed to some extent Dr. Longmire's treatment of Plaintiff and her diagnosis (tr. at 22), he never stated what weight he assigned to Dr. Longmire's opinion.[2] The Court could guess as to what weight the ALJ's findings indicate, but the fact remains that the ALJ failed to explicitly assign a weight to Dr. Longmire's opinion as required by the law of this circuit. Without such an explicit statement of weight, this Court does not have a basis for reviewing whether the ALJ's decision was supported by substantial evidence. Thus, the ALJ failed to apply the correct legal

---

[2] Dr. Longmire's treatment notes and diagnosis constitute an "opinion" under the regulations and Eleventh Circuit case law. *See Winschel,* 631 F.3d at 1178–79 (holding that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis; what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement constitutes an opinion, which requires the ALJ to state with particularity the weight given to it and the reasons therefor) (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).

standard to the opinion of Dr. Longmire, which is not harmless and constitutes reversible error. *See Winschel*, 631 F.3d at 1179; *McClurkin*, 625 F. App'x at 963.[3] On remand, the ALJ must state with particularity the weight given to Dr. Longmire's opinion, and to the extent he did not do so, the weight given to all other treating and non-treating physicians' opinions.[4]

## IV. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and briefs of the parties, the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability and DIB is REVERSED and REMANDED for further administrative proceedings consistent with this opinion. A separate closing order will be entered.

---

[3] This case is unlike *Colon v. Colvin*, 660 F. App'x 867, 870 (11th Cir. 2016), in which the Eleventh Circuit held that there was no reversible error in the ALJ's failure to state the weight given to a treating physician's findings and in not mentioning findings of other doctors because their opinions were consistent with the ALJ's findings and the ALJ's discussion did not leave the court wondering how the ALJ came to his decision.

[4] The ALJ's error, discussed above, is dispositive of this case. Therefore, it is unnecessary to address Plaintiff's remaining argument with regard to her credibility. *See* note 1, *supra*. *See also Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record); *McClurkin*, 625 F. App'x at 963 n.3 (no need to analyze other issues when case must be reversed due to other dispositive errors).

**DONE** and **ORDERED** on September 24, 2018.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704